IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HARRISON TYRONE BEASON,       )
        Petitioner,              )     C.A. No. 06-308 Erie
                                 )
        v.                       )
                                 )     District Judge McLaughlin
LOUIS FOLINO, et al.,         )     Chief Magistrate Judge Baxter
        Respondents.             )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the instant Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

**II.    REPORT**

Petitioner Harrison Tyrone Beason is a state prisoner incarcerated at the State Correctional Institution at Greene, located in Waynesburg, Pennsylvania. Currently pending before this Court is his Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254.[1] [Document # 1].

    **A.    Relevant Factual and Procedural History**

On January 1, 2004, Corporal Arron D. Wassell of the Erie Police Department filed a criminal complaint against Petitioner charging him with the aggravated assault of Jeffrey Smith. The charge stemmed from an incident that occurred that day at approximately 9:30 p.m., when the Petitioner assaulted Smith by striking him repeatedly with a brick. The incident occurred at

---

[1] Respondents have filed with their Response [Document # 19] the original state court record in hard-copy format. The documents contained therein are indexed and numbered 1 through 40 and will be cited to as "SCR No. __". Respondents also have submitted the relevant transcripts in hard-copy format.

1

Petitioner's apartment, located on Peach Street, in Erie, Pennsylvania.

Keith R. Clelland ("Clelland"), Assistant Public Defender, was appointed to represent Petitioner. John H. Daneri ("Daneri"), Assistant District Attorney, prosecuted the case.

On May 17, 2004, Petitioner's jury trial commenced before the Honorable John J. Trucilla of the Erie County Court of Common Pleas. Daneri called Cpl. Wassell to testify. During direct examination, Wassell stated that, on January 1, 2004, he arrived at Petitioner's apartment to investigate the assault. (5/17/2004 Trial Tr. at 89). He informed Petitioner that he was a suspect. Petitioner allowed Wassall into the apartment and told him that Smith "was all over my woman." (Id.) Wassell testified that he observed a loose brick on the floor of Petitioner's apartment. (Id. at 91). Daneri then asked Wassell: "What did [Petitioner] say that he did when he saw someone all over his woman?" (Id.) Wassell responded: "He said he hit him." (Id.) Clelland immediately objected, contending that the defense had never been advised that Petitioner had made that admission. (Id. at 91-94, 112). Daneri asserted that you could infer from the police report, which had been disclosed to the defense, that Petitioner told Wassell that he hit Smith because Smith "was all over his woman." (Id. at 114). Clelland stated: "Of course, I did not read that as such." (Id. at 115).

Clelland moved for a mistrial on the basis that Petitioner made the statement to Wassell during a custodial interrogation but before he was given his Miranda rights. (Id. at 113-17). Had he been aware that Petitioner made the statement to Wassell, Clelland explained, he would have moved to suppress it. (Id.) Judge Trucilla agreed that the admission was suppressible. (Id.) The follow exchange then occurred:

> THE COURT: Well, have you discussed [a mistrial] with your client? And I wanted the record to reflect that you have for various reasons, such as perhaps you were satisfied with this jury, perhaps you were going to challenge the credibility of the officer to the jury. For those reasons, my intention is to – and so you can do this in an informed manner, is to find that the Commonwealth did not intentionally manufacture this particular evidence, nor was it willing conduct on behalf of Attorney Daneri, or Corporal Wassell for that matter, but something that did happen. In other words, we have an admission on the record that was subject to custodial interrogation. My intention would be to declare a mistrial without prejudice to the Commonwealth to retry this matter without the substance of those statements.
>
> MR. CLELLAND: I absolutely agree that there was no intent on their part, I absolutely agree.

2

- - -

>THE COURT: You have had an opportunity to discuss this matter on those facts with your client, is that correct?
>
>MR. CLELLAND: I have, Judge.
>
>THE COURT: What is your decision?
>
>MR. CLELLAND: My decision is to move for the mistrial.
>
>THE COURT: All right. And you would agree that if granted, it would be without prejudice to the Commonwealth?
>
>MR. CLELLAND: I do agree, Judge.

(Id. at 116-18).

The Commonwealth retried Petitioner the next day, on May 18, 2004. It presented evidence from which the jury could conclude that Petitioner beat Smith with a brick. Smith had knocked on Petitioner's apartment door looking for an individual named Chuck Greene. Petitioner answered the door and accused Smith of "foolin' around with his woman." Petitioner's girlfriend, Pam Williams, walked in during the attack and told Petitioner that he had the "wrong guy." Smith ran from Petitioner and called the police. Cpl. Wassell and Officer Michael Mancuso responded to the call and Smith described Petitioner to them.

At the trial, the Commonwealth presented the testimony of Smith, Cpl. Wassell, Officer Mancuso, and three other individuals. Pamela Williams testified for the defense. She stated that Smith was hiding in a closet in Petitioner's apartment, jumped out and grabbed her, and that she pushed him back and hit him with a brick. Williams stated that Petitioner walked in during her altercation with Smith and that he "tussled" with Smith "for a few minutes." The defense also called Robin Smith to corroborate Williams's testimony.

The jury did not credit Petitioner's defense and found him guilty of Aggravated Assault. Judge Trucilla sentenced him to between 90 months to 14 years incarceration. Petitioner, through Clelland, filed a direct appeal. (See SCR Nos. 15, 17, and 19). On June 20, 2005, the Superior Court of Pennsylvania issued a Memorandum Opinion affirming the judgement of sentence. (SCR No. 23).

3

On or around July 11, 2005, Petitioner filed a *pro se* motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. (SCR No. 21). Judge Trucilla appointed William Hathaway, Esquire, to represent Petitioner and counsel filed a supplement to the PCRA motion. (SCR No. 24). In that supplemental PCRA motion, it was asserted that Clelland provided Petitioner with ineffective assistance for failing to conduct an investigation into the criminal background of Smith and for failing to impeach Smith's testimony with his prior *crimen falsi* convictions.[2]

Judge Trucilla presided over an evidentiary hearing on October 6, 2005. At the hearing, Judge Trucilla took judicial notice of Smith's criminal record. (10/6/2005 PCRA Tr. at 2). That record demonstrated that Smith had prior convictions of criminal mischief (a summary offense), driving while operating privileges are suspended, operating a vehicle without insurance of inspection, unauthorized transfer or use of registration, simple assault, and disorderly conduct. (Id. at 3-4; see also SCR No. 40 at 5). Judge Trucilla held that none of Smith's convictions were *crimen falsi*,[3] and therefore Petitioner's claim of ineffective assistance was unsupportable. (Id. at 3-6; see also SCR No. 35).

Petitioner – who waived his right to counsel and elected to proceed *pro se* – filed an appeal. (SCR. No. 38). In addition to the claim he had raised in the supplemental PCRA motion, he also asserted Clelland provided him with ineffective assistance for failing to conduct an investigation into Smith's probationary status and for failing to impeach Smith's testimony on that basis. (SCR No. 40 at 5-6). He also claimed that his prior counsel were ineffective for failing to invoke his rights against double jeopardy. He asserted that the prosecution had intentionally provoked the

---

[2] "*Crimen falsi* is defined as referring to crimes in the nature of perjury or subornation of perjury, false statement, criminal fraud, embezzlement, false pretense or any other offense which involves some element of deceitfulness, untruthfulness or falsification bearing on a witness' propensity to testify truthfully." Bolus v. Fisher, 785 A.2d 174, 178 (Pa. Commw. Ct. 2001).

[3] Smith once had been charged with receiving stolen property, which is a crime of *crimen falsi*, but that charge was reduced per a plea agreement to a charge of criminal mischief. (10/6/2005 PCRA Tr. at 3-5).

4

defense to move for a mistrial and that it should not have been permitted to retry Petitioner. (SCR No. 40 at 3-4, 7).

On January 13, 2006, Judge Trucilla issued an Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) in which he held that Petitioner's claims had no merit. (SCR No. 35). The Superior Court affirmed in a Memorandum Opinion dated November 14, 2006. (SCR. No. 40). It rejected Petitioner's claims that Clelland should have investigated Smith's criminal background and probationary status and attack Smith's credibility on those bases. It noted that Pennsylvania Rule of Evidence 609(a) provides:

> For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or by *nolo contendere*, shall be admitted *if it involved dishonesty or false statement.*

(Id. at 5 (emphasis added)). It held that none of Smith's prior convictions fell within this evidentiary rule, and therefore they would not have been admissible at trial had Clelland attempted to introduce them. (Id. at 5; see also SCR No. 35 at 6). It also held that evidence that Smith was on probation would not have been admissible to impeach his credibility. (Id. at 5-6).

The Superior Court further ruled that Petitioner's claim that his prior counsel provided him with deficient representation for not invoking his double jeopardy rights lacked merit. (Id. at 7). It adopted in full Judge Trucilla's disposition of this claim. (Id.) Judge Trucilla had noted that in evaluating the double jeopardy implications of the grant of a mistrial on a motion by the defendant under both federal and state constitutional law, the court must determine whether the prosecution acted with the specific intent to precipitate the mistrial. (SCR No. 35 at 7 (quoting Commonwealth v. Hunter, 554 A.2d 112, 114-15 (Pa. Super. Ct. 1989); United States v. Dinitz, 424 U.S. 600 (1976)). He then held that he had "made a factual finding, based upon the circumstances present [at the first] trial, that the Commonwealth's conduct was not specifically intended to bring about a mistrial." (Id. at 8).

After the Superior Court issued its decision, Petitioner commenced habeas proceedings in this Court. He raises the same claims of ineffective assistance of counsel that he raised in the state PCRA proceeding.

5

**B.     Discussion**

Because the state court adjudicated Petitioner's claims on the merits, this Court must review them under the deferential standard set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (codified at 28 U.S.C. § 2254(d)).  AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

Under AEDPA, federal habeas relief may only be granted when the state court's decision on the merits of a claim "resulted in a decision that was contrary to,[4] or involved an unreasonable application of,[5] clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).  Hackett v. Price, 381 F.3d 281, 287 (3d Cir. 2004); Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000).  State court factual determinations are also given considerable deference.  Lambert, 387 F.3d at 239.  Petitioner must establish that the state court's adjudication of his claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).  Within this overarching standard, he may attack specific factual determinations that are subsidiary to the ultimate decision.  See 28 U.S.C. § 2254(e)(1); Lambert, 387 F.3d at 235.  Section 2254(e)(1) instructs that "a determination of a factual issue made by a

---

[4] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004) (quoting Williams, 529 U.S. at 405-06).

[5] "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular … case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'"  Lambert, 387 F.3d at 324.

6

State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

The "clearly established Federal law" in which to analyze Petitioner's claims of ineffective assistance under 28 U.S.C. § 2254(d)(1) is set forth in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that in order to establish that counsel's service was constitutionally deficient, a petitioner must demonstrate: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. See also Wiggins v. Smith, 539 U.S. 510 (2003).

The state court's adjudication of Petitioner's ineffective assistance claims was not "contrary to" Strickland. See 28 U.S.C. § 2254(d)(1). The state court applied the correct legal standard to the claims (see SCR No. 35 at 5), and that is sufficient to satisfy review under the "contrary to" clause of § 2254(d)(1). Williams, 529 U.S. at 406; Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004), *rev'd on other grounds sub nom.*, 545 U.S. 374 (2005).[6]

Additionally, the state court's adjudication of Petitioner's ineffective assistance of counsel claims was not an "unreasonable application" of Strickland. 28 U.S.C. § 2254(d)(1). We are bound by the state court's determination that neither Smith's prior convictions nor his probationary status would have been admissible at trial to impeach his credibility. That determination is a matter of state law and it is not reviewable by a federal habeas court. See e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (federal courts may not "reexamine state court determination on state-law questions"). Accordingly, because the evidence that Petitioner faults Clelland for failing to gather and present at trial was inadmissible, Petitioner cannot demonstrate that Clelland acted objectively unreasonably for not presenting it, or that he was prejudiced by his counsel's handling of the matter. Cf. Priester v. Vaughn, 382 F.3d 394, 401-02 (3d Cir. 2004).

We are similarly bound by Judge Trucilla's factual finding that the prosecution did not

---

6

Although Pennsylvania courts typically articulate a three-prong test for gauging ineffective assistance claims and Strickland sets forth its test in two prongs, the legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts. Rompilla, 355 F.3d at 248-49; see also Werts, 228 F.3d at 202-03.

7

specifically intend to provoke a mistrial of Petitioner's first trial. This finding is buttressed by Clelland's reaction to the situation. Clelland did not contend that the prosecution committed any type of misconduct, and he stated on the record that he agreed with Judge Trucilla "that there was no intent on [the prosecution's] part" to provoke the mistrial. (5/17/2004 Trial Tr. at 117). Petitioner has not demonstrated that Judge Trucilla's factual finding was unreasonable and he has not rebutted the presumption of correctness that we must accord that factual finding. 28 U.S.C. §§ 2254(d)(2), (e)(1).

As noted by the state court, the application of the double jeopardy bar is dependent on a showing of the prosecutor's subjective intent to cause a mistrial in order to retry the case. Dinitz, 424 U.S. at 606-12; Oregon v. Kennedy, 456 U.S. 667, 675-76 (1982); see also United States v. Williams, 472 F.3d 81 (3d Cir. 2007). In this case, the prosecution did not intend to cause a mistrial, and therefore Petitioner's double jeopardy claim has no merit. As a result, Petitioner's prior counsel were not ineffective for failing to raise this meritless claim. See e.g., Parrish v. Fulcomer, 150 F.3d 326, 328-29 (3d Cir. 1998).

## C. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Applying this standard here, jurists of reason would not find it debatable whether Petitioner's claims were without merit. Accordingly, a certificate of appealability should be denied.

### III. CONCLUSION

Based on the foregoing, it is respectfully recommended that the instant petition for writ of habeas corpus be denied and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: January 14, 2008